IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

**FILED**

MAY 05 2026

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLLINOIS
E. ST. LOUIS OFFICE

JACQUELINE D. SIMON,
    Plaintiff,

v.

3:26-cv-00597-SMY

BEHAVIOR INTERVENTION SERVICES, LLC,
    Defendant.

Case No.: _____

## JURY TRIAL DEMANDED

## COMPLAINT FOR DISABILITY DISCRIMINATION AND RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

## I. INTRODUCTION

1.  This is an action brought pursuant to the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008 ("ADA"), 42 U.S.C. §§ 12101 et seq., to remedy acts of disability discrimination and retaliation committed by Defendant Behavior Intervention Services, LLC ("BIS" or "Defendant") against Plaintiff Jacqueline D. Simon ("Plaintiff").

2.  Plaintiff, an employee of Defendant, submitted medical documentation — including abnormal laboratory results — to her supervisor to justify an illness-related absence. Rather than maintaining the confidentiality of that sensitive medical information, Plaintiff's supervisor forwarded Plaintiff's abnormal lab results to four or five management personnel, none of whom supervised Plaintiff, without Plaintiff's authorization. Plaintiff was copied on that email and immediately responded to all recipients, expressly objecting to the disclosure and invoking her right to privacy over her protected health information.

3.  When Plaintiff formally complained about the unauthorized disclosure and subsequently asserted her legal rights by threatening litigation, Defendant retaliated by placing her on unpaid administrative leave and discharging her. Defendant's own Executive Director, Dawn Schmitt, expressly confirmed in writing that the adverse employment action was taken in direct response to Plaintiff's demand letter and litigation threat. An independent governmental tribunal — the Missouri Department of Labor and Industrial Relations, Appeals Tribunal — separately found as adjudicated fact that Defendant discharged Plaintiff "because the claimant made demands and threatened litigation."

4. Plaintiff seeks compensatory damages, back pay, front pay, punitive damages, and all other relief to which she is entitled.

## II. JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12117, incorporating the enforcement provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). Plaintiff resides in Madison County, Illinois, within the Southern District of Illinois, East St. Louis Division.

7. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission, Charge No. 560-2025-03588, on or about January 22, 2026. The EEOC issued a Determination and Notice of Rights ("Right to Sue Letter") on February 18, 2026. This Complaint is filed within ninety (90) days of Plaintiff's receipt of the Right to Sue Letter. All administrative prerequisites to filing suit have been satisfied.

## III. PARTIES

8. Plaintiff Jacqueline D. Simon is an adult individual residing at 1665 3rd Street, Madison, Illinois 62060. At all relevant times, Plaintiff was an "employee" of Defendant within the meaning of 42 U.S.C. § 12111(4).

9. Defendant Behavior Intervention Services, LLC ("BIS") is a limited liability company with its principal place of business at 2644 Metro Blvd, Maryland Heights, Missouri 63043. Defendant is an "employer" within the meaning of 42 U.S.C. § 12111(5), employing fifteen (15) or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

10. At all relevant times, Defendant operated residential homes providing community support services to adults with disabilities and employed Plaintiff as a Direct Support Specialist.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's Employment and Performance

11. Plaintiff was hired by Defendant on or about June 17, 2024, as a Direct Support Specialist. Plaintiff worked a single 17-hour overnight shift per week at a residential care home operated by Defendant.

12. Plaintiff performed her duties competently and without incident throughout her employment. Her direct supervisor, Sharren Baynes (ISL Manager), expressly acknowledged Plaintiff's performance in writing, stating: "I'm only vouching for Jacqueline — she comes to work, does her job, and goes home." Ms. Baynes further acknowledged Plaintiff's one-year employment milestone and commended her

dedication, including Plaintiff's personal financial contributions to ensure the home ran smoothly.

13. Defendant issued no written disciplinary warnings, performance improvement plans, or any other documentation reflecting any performance deficiency during Plaintiff's employment.

**B. Plaintiff's Medical Absence and Unauthorized Disclosure of Abnormal Lab Results**

14. On or about June 21, 2025, Plaintiff notified Defendant that she was ill and would be unable to work her scheduled shift on June 22, 2025. Plaintiff submitted medical documentation — including abnormal laboratory results — to her supervisor, Sharon Baynes, via email to support her illness-related absence.

15. Rather than maintaining the confidentiality of Plaintiff's highly sensitive medical information, Ms. Baynes forwarded Plaintiff's abnormal lab results to four or five management personnel via email, without Plaintiff's authorization. None of the recipients of this forwarded email served as Plaintiff's supervisors or had any supervisory authority over Plaintiff.

16. Plaintiff was copied on Ms. Baynes's email disclosing her abnormal lab results. Upon receiving the email, Plaintiff immediately replied to all recipients, expressly stating that she did not want her protected health information shared, and objecting to the unauthorized disclosure on the record.

17. Defendant's own written HR Policy No. 214 — Medical Information Privacy Policy ("Policy 214") — expressly states that Defendant's Benefit Plans "will not disclose protected health information to BIS for the purposes of employment-related actions or decisions, or in connection with any other benefit or employee benefit plan." The forwarding of Plaintiff's abnormal lab results to multiple management personnel with no supervisory relationship to Plaintiff constituted a direct violation of Policy 214.

18. Plaintiff had a qualifying disability within the meaning of 42 U.S.C. § 12102, as evidenced in part by the abnormal laboratory results that were disclosed without her authorization. Additionally, Defendant's subsequent treatment of Plaintiff's medical documentation as a trigger for adverse employment action establishes that Defendant regarded Plaintiff as having a disability.

**C. Plaintiff's Protected Activity**

19. Plaintiff's immediate, written reply-to-all objection to the unauthorized disclosure of her abnormal lab results — transmitted contemporaneously via the same email chain — constituted protected activity under 42 U.S.C. § 12203(a).

20. Plaintiff further complained to Defendant's Director about the unauthorized disclosure of her medical information, constituting additional protected activity under 42 U.S.C. § 12203(a).

21. On or about June 25, 2025, Plaintiff submitted a written demand letter to Defendant setting forth her legal rights, identifying the unlawful disclosure, and threatening litigation. This written demand letter constituted protected activity under 42 U.S.C. § 12203(a).

22. On or about June 27, 2025, Plaintiff sent a written email to Executive Director Dawn Schmitt and Director Jamie Klamert expressly stating: "Pending litigation is not a reason or excuse to remove me from employment," placing Defendant on further written notice that any adverse action based on her protected activity would constitute actionable retaliation.

## D. Defendant's Retaliatory Adverse Actions

23. On June 27, 2025 — the same day Plaintiff sent the email referenced in Paragraph 22 — Executive Director Dawn Schmitt sent Plaintiff a written communication stating: "Given the recent threat of litigation and the demands you have presented, we have engaged outside legal counsel to handle this matter on our behalf." In that same communication, Ms. Schmitt placed Plaintiff on unpaid administrative leave, effective immediately.

24. The causal connection between Plaintiff's protected activity and Defendant's adverse action is established directly and conclusively by Defendant's own written admissions: in a single communication, Defendant's most senior executive identified Plaintiff's threat of litigation as the stated basis for the adverse employment action.

25. Defendant also retained outside legal counsel, Husch Blackwell LLP, which responded to Plaintiff's demand letter on June 27, 2025, confirming that Defendant was fully aware of Plaintiff's protected activity and had mobilized legal resources in direct response thereto.

26. Defendant's stated rationale — that the disclosure of Plaintiff's medical information was a permissible internal business communication — is pretextual. Policy 214 expressly prohibits the disclosure of protected health information for employment-related purposes. Moreover, Plaintiff's contemporaneous written objection to the disclosure, transmitted on the same email chain, placed Defendant on immediate notice that the disclosure was unauthorized and objected to.

27. On or about July 15, 2025, Defendant sent Plaintiff a purported offer to return to work within three days. The offer was not a genuine offer of reinstatement — it required Plaintiff to be "onboarded and trained once again" as if a new hire, despite no valid termination for cause. The offer also proposed materially different terms from Plaintiff's original position, including a changed work location, different work days, and different work hours. Plaintiff could not accept these changed terms. At the time, Plaintiff was providing essential caregiving support to her son in the care of his toddler child, following the maternal death of the child's mother. The changed schedule was incompatible with those caregiving responsibilities. Plaintiff declined the offer.

28. The Missouri Department of Labor and Industrial Relations, Appeals Tribunal, rejected Defendant's characterization that Plaintiff resigned and found, as adjudicated fact, that Plaintiff was discharged effective June 27, 2025, because she "made demands and threatened litigation." Appeal No. 2314607, Decision dated August 14, 2025.

## V. COUNT I

## DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

## 42 U.S.C. § 12112

29. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

30. The ADA prohibits covered employers from discriminating against a qualified individual on the basis of disability in the terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a).

31. Plaintiff was a qualified individual with a disability, or was regarded by Defendant as having a disability, within the meaning of the ADA. Plaintiff could perform the essential functions of her position.

32. Defendant violated the ADA by: (a) improperly disclosing Plaintiff's abnormal laboratory results to four or five non-supervisory management personnel without authorization, in violation of the ADA's medical information confidentiality provisions, 42 U.S.C. § 12112(d), and Defendant's own Policy 214; and (b) taking adverse employment action against Plaintiff based on her disability status and/or her submission of medical documentation evidencing a disability.

33. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff suffered lost wages, lost benefits, lost employment opportunities, emotional distress, humiliation, and other compensatory damages in an amount to be determined at trial.

34. Defendant's conduct was intentional, willful, and in reckless disregard of Plaintiff's federally protected rights, entitling Plaintiff to punitive damages pursuant to 42 U.S.C. § 1981a.

## VI. COUNT II

## RETALIATION IN VIOLATION OF THE ADA

## 42 U.S.C. § 12203

35. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

36. The ADA prohibits retaliation against any individual who has opposed any act or practice made unlawful by the ADA. 42 U.S.C. § 12203(a).

37. Plaintiff engaged in the following protected activities: (a) immediately objecting in writing on the same email chain to the unauthorized disclosure of her abnormal lab results; (b) complaining to Defendant's Director about the unauthorized disclosure; (c) submitting a written demand letter asserting her legal rights and threatening litigation; and (d) expressly notifying Defendant in writing that removal from employment based on pending litigation was unlawful.

38. Defendant took materially adverse employment actions against Plaintiff by placing her on unpaid administrative leave and discharging her effective June 27, 2025.

39. A direct causal connection exists between Plaintiff's protected activity and Defendant's adverse actions, established by: (a) Executive Director Dawn Schmitt's written admission identifying the litigation threat as the stated basis for the adverse action; (b) the Missouri Appeals Tribunal's adjudicated finding that Plaintiff was discharged because she "made demands and threatened litigation"; and (c) the exact temporal coincidence between Plaintiff's protected communications and the adverse action, both occurring on June 27, 2025. See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006).

40. Defendant's stated legitimate business reasons are pretextual. Policy 214 expressly prohibits the very conduct Defendant claimed was permissible, Plaintiff's contemporaneous written objection eliminated any claim of implied consent, and Defendant's own executive eliminated any need to infer retaliatory motive by stating it explicitly.

41. As a direct and proximate result of Defendant's retaliation, Plaintiff suffered lost wages, lost benefits, lost employment opportunities, emotional distress, humiliation, and other compensatory damages in an amount to be determined at trial.

42. Defendant's retaliatory conduct was intentional, willful, and in reckless disregard of Plaintiff's federally protected rights, entitling Plaintiff to punitive damages pursuant to 42 U.S.C. § 1981a.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jacqueline D. Simon respectfully requests that this Court enter judgment in her favor and against Defendant Behavior Intervention Services, LLC, and award the following relief:

(a) A declaration that Defendant's acts and practices constitute unlawful disability discrimination and retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12112 and 12203;

(b) Back pay, including lost wages and benefits from the date of Plaintiff's discharge through the date of judgment, with interest;

(c) Front pay in lieu of reinstatement, or in the alternative, an order of reinstatement to an equivalent position with full restoration of benefits and seniority;

(d) Compensatory damages for emotional distress, humiliation, loss of dignity, and damage to professional reputation, in an amount to be determined at trial;

(e) Punitive damages pursuant to 42 U.S.C. § 1981a for Defendant's intentional and reckless disregard of Plaintiff's federally protected rights;

(f) Reasonable attorneys' fees and litigation costs pursuant to 42 U.S.C. § 12205, should Plaintiff obtain counsel, or as otherwise provided by law;

(g) An injunction requiring Defendant to cease and desist from engaging in disability discrimination and retaliation against its employees;

(h) Pre-judgment and post-judgment interest on all monetary awards; and

(i) Such other and further relief as this Court deems just and proper.

## VIII. DEMAND FOR JURY TRIAL

Plaintiff Jacqueline D. Simon hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

Jacqueline D. Simon
Plaintiff, Pro Se
1665 3rd Street
Madison, Illinois 62060
Telephone: 618-971-0202

Dated: May 5, 2026

## CERTIFICATE OF SERVICE

I, Jacqueline D. Simon, hereby certify that on the date indicated below, I filed the foregoing Complaint with the Clerk of the United States District Court for the Southern District of Illinois, East St. Louis Division, and that service upon Defendant shall be effectuated pursuant to the Federal Rules of Civil Procedure following issuance of summons by the Court.

Jacqueline D. Simon
Dated: May 05, 2026